UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GARIBALDI ENCARNACION,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | No. 10-4336 |
| BP EXPLORATION AND<br>PRODUCTION, INC., ET AL.,<br>    Defendants | SECTION "E" |

ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant, Southern Environmental of Louisiana, LLC ("Southern").[1]  Plaintiff, Garibaldi Encarnacion ("Plaintiff"), opposes the motion.[2]  For the following reasons, the motion is **GRANTED**.

*Background*

Plaintiff, a former Southern employee, filed his original complaint in the above-captioned matter on November 16, 2010, seeking to recover for injuries he sustained in an accident on September 17, 2010, that occurred aboard the F/V FLOATEL ONE ("FLOATEL ONE").[3]  At the time of his accident, Plaintiff was employed as part of the massive cleanup response to the Deepwater Horizon oil spill in the Gulf of Mexico.  Plaintiff claims that he attended a safety meeting aboard the FLOATEL ONE on September 17, 2010.  During that meeting, a fire extinguisher detached from the wall, fell, and expelled fire retardant chemicals, causing panic to ensue.  Plaintiff alleges he was injured as meeting attendees

---

[1] R. Doc. 70.  Southern has also filed a reply memorandum in support of its motion for summary judgment.  *See* R. Doc. 82.

[2] R. Docs. 75 and 80.

[3] R. Doc. 1.

1

evacuated the room.

Plaintiff's original complaint named Southern, BP Exploration and Production, Inc. ("BP"), Stallion Offshore Quarters, Inc. ("Stallion"), and the FLOATEL ONE as defendants. On March 19, 2012, Plaintiff filed his first amended complaint to add Canal Barge Company, Inc. ("Canal"), the alleged owner of the FLOATEL ONE, as a defendant.[4] Plaintiff later dismissed his claims against BP and Stallion.[5] The Court dismissed the FLOATEL ONE as a party because Plaintiff failed to properly serve the vessel.[6] The Court also dismissed Canal due to Plaintiff's failure to prosecute.[7] As a result, Southern is the only remaining defendant in this matter.

Plaintiff has asserted claims against Southern for (1) negligence under the Jones Act, 46 U.S.C. § 30104 (the "Jones Act" or the "Act"), (2) maintenance and cure under general maritime law, and (3) unseaworthiness under general maritime law, to compensate him for the injuries he allegedly sustained on September 17, 2010. Southern has moved for summary judgment on all claims.[8]

### *Summary Judgment Standard*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[4] R. Doc. 43.

[5] R. Docs. 26 and 56.

[6] R. Doc. 86.

[7] R. Doc. 62.

[8] R. Doc. 70.

judgment as a matter of law." Fed. R. Civ. P. 56 ; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.' " *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Id.* at 322-23. Once the burden has shifted, the non-moving party must direct the Court's attention to something in the pleadings or other evidence in the record that sets forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist. *Id.* at 324. The non-moving party cannot simply rely on allegations or blanket denials of the moving party's pleadings as a means of establishing a genuine issue of material fact, but instead must identify specific facts that establish a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). If the dispositive issue is one on which the non-moving party will bear the burden of proof at trial, however, the moving party may satisfy its burden by simply pointing out that the evidence in the record is insufficient with respect to an essential element of the non-moving party's claim. *See Celotex*, 477 U.S. at 325. The nonmoving party must then respond, either by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party" or by coming forward with additional evidence. *Celotex*, 477 U.S. at 332-33 & 333 n.3.

"An issue is material if its resolution could affect the outcome of the action."

*DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150-51 (2000). All reasonable inferences are drawn in favor of the non-moving party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

## *Law and Analysis*

### I. Jones Act Negligence

"The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (quoting 46 U.S.C. § 688(a), subsequently recodified at 46 U.S.C. § 30104). However, as the Act does not define the term "seaman," that issue has been left to the courts. *Chandris*, 515 U.S. at 355. The U.S. Supreme Court set forth a two-part test for determining seaman status in *Chandris, Inc. v. Latsis*. Under *Chandris*, a plaintiff is a Jones Act seaman if: (1) his duties contributed to the function of the vessel or the accomplishment of its mission, *and* (2) he had a connection to a vessel or an identifiable fleet of vessels in navigation that was substantial in terms of both its duration and nature. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (citing *Chandris*, 515 U.S. at 355-358); *Hufnagel v. Omega Serv. Ind., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999) (citing *Harbor Tug*, 520 U.S. at 554). A plaintiff

4

bears the burden of proving seaman status. *Barrett v. Chevron, U.S.A., Inc.*, 752 F.2d 129, 132 (5th Cir. 1985). While the determination of seaman status is a mixed question of law and fact, summary judgment is appropriate when "the facts and the law will reasonably support only one conclusion." *Harbor Tug*, 520 U.S. at 554 (internal quotation marks omitted); *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1995).

### A. Plaintiff Fails to Show Any Contribution to the Function of a Vessel or the Accomplishment of its Mission

First, Southern argues that Plaintiff is not a Jones Act seaman because he did not contribute to the function of a vessel or the accomplishment of its mission. This "threshold" prong of the *Chandris* test is generally " 'very broad,' encompassing all who work at sea in the service of a ship." *McCord v. Fab-Con, Inc.*, 2012 WL 3613111, at *3 (E.D. La., Aug. 21, 2012) (Barbier, J.) (quoting *Chandris*, 515 U.S. at 376). "It is unnecessary that the plaintiff actually aid in the navigation or transportation functions of the vessel." *McCord*, 2012 WL 3613111, at *3 (citing *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 346 (1991)).

Southern submits Plaintiff's deposition testimony as summary judgment evidence that Plaintiff never contributed to a vessel's function or mission.[9] Plaintiff testified at his deposition that he performed oil spill cleanup as a Southern employee for six months prior to sustaining his injuries on September 17, 2010.[10] At the beginning of his employment with Southern, Plaintiff worked aboard the M/V JOHN LEE ("JOHN LEE") for approximately

---

[9] R. Doc. 70-3.

[10] R. Doc. 70-3 at p. 2.

5

six weeks skimming oil and laying oil-absorbing boom.[11] Plaintiff returned to Venice, Louisiana, to sleep in a trailer at the end of each shift while he was assigned to the JOHN LEE.[12] After six weeks, Plaintiff asked his supervisor for a permanent reassignment in order to "get away from getting all that oil and stuff on [him]."[13] Plaintiff was then reassigned to land-based beach cleanup and never again worked on the JOHN LEE.[14] While performing land-based beach cleanup, Plaintiff would attend daily safety meetings on the FLOATEL ONE and, eat and sleep aboard the vessel.[15] Crew boats ferried Plaintiff from the FLOATEL ONE to the relevant beach where he would complete his assigned cleanup duties.

In factually analogous cases, the Fifth Circuit and U.S. District Courts within the Fifth Circuit have held that workers with duties similar to Plaintiff's did not contribute to a vessel's function or mission. For example, in *Hufnagel v. Omega Service Industries, Inc.*, plaintiff, Richard Hufnagel ("Hufnagel"), was an employee of Omega Service Industries, Inc. ("Omega"), an oilfield service company that would contract with platform owners to construct and repair offshore oil and gas platforms. *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 344 (5th Cir. 1999). Generally, when a platform owner requested service, Omega would assign a crew of employees who would stay on the platform until their work was complete, which would sometimes require Omega employees to sleep or eat meals on the platforms or on vessels that served as floating "hotels." *Hufnagel*, 184 F.3d at 344-45.

---

[11] R. Doc. 70-3 at p. 10.

[12] R. Doc. 70-3 at p. 11.

[13] R. Doc. 70-3 at p. 12.

[14] R. Doc. 70-3 at p. 13.

[15] R. Doc. 70-3 at pp. 16-18.

Omega did not own or hire any vessels, and no Omega employees would be assigned as crew members of any vessel. *Hufnagel*, 184 F.3d at 344.

Hufnagel was a rigger who assisted welders and fitters in repairing a platform. *Hufnagel*, 184 F.3d at 344. The platform owner supplied a vessel, the AMBERJACK, on which Hufnagel ate, slept and "spent time." *Hufnagel*, 184 F.3d at 347. Given these facts, the Fifth Circuit concluded that Hufnagel "in no way 'contribut[ed] to the function of the vessel or to the accomplishment of its mission.'" *Hufnagel*, 184 F.3d at 347 (quoting *Chandris*, 115 S.Ct. At 2184). In finding that Hufnagel was not a seaman, the Fifth Circuit observed that

> Hufnagel's duties involved platform work, and were not related to the navigation, maintenance, or voyage of the AMBERJACK. Hufnagel's sole purpose for being present on the platform or the AMBERJACK related to the repair of the platform. The AMBERJACK, by contrast, was present to support the repair crew by providing lodging quarters and a work area. Hufnagel's duties as a platform worker in no way contributed to "doing the ship's work." *See McDermott, Int'l v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991).
> 
> The facts that Hufnagel ate, slept, and spent time on the AMBERJACK do not make him a crew member. *See Golden v. Rowan Companies, Inc.*, 778 F.2d 1022, 1025 (5th Cir. 1985) ("The facts that Golden lived on the tender and that some of his tools and machine parts were stored there do not mean that he was permanently assigned to the tender."). Nor does the fact that Hufnagel may have performed minor duties aboard the AMBERJACK transform his position as a platform worker into that of a seaman. *See Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1075 (5th Cir. 1986) (considering amount of time spent working on vessels during claimant's one-year employment with employer); *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1346 (5th Cir. 1980) (holding platform worker who was injured while assisting to stow anchor chain of tender vessel was not a seaman where he was not permanently assigned to that vessel, and work on vessel was incidental to worker's primary responsibilities).

7

*Hufnagel*, 182 F.3d at 347; *see also Pearson v. Offshore Specialty Fabricators*, 1992 WL 300826, at *2-3 (E.D. La. Oct. 8, 1992) (Wicker, J.) (finding that a plaintiff tasked with sandblasting and painting a platform was not a seaman because plaintiff did not contribute to the vessel's mission of providing sleeping and eating quarters to all persons working aboard the platform).

Plaintiff responds "that it is absurd to assert that he did not contribute to the function or mission of the [FLOATEL ONE] upon which the accident occurred."[16] Plaintiff submits that "the very function and mission of the [FLOATEL ONE] was to provide operational facilities for the vast body of workers engaged in cleanup operations."[17] Southern has come forward with competent summary judgment evidence – Plaintiff's sworn deposition testimony – that the only work Plaintiff performed aboard the vessel was to attend brief, regular safety meetings. The substantial remainder of his time was spent doing land-based beach cleanup work.[18] Even if the Court assumes Plaintiff's assertion that "the very function and mission" of the FLOATEL ONE was to support workers performing oil cleanup in the Gulf of Mexico is true, Plaintiff nevertheless has failed to come forward

---

[16] R. Doc. 75 at p. 4.

[17] R. Doc. 75 at p. 4.

[18] Southern relies on Plaintiff's testimony as its summary judgment evidence. Plaintiff claims that Southern "adduces no *real* evidence" in support of its motion for summary judgment. R. Doc. 75 at p. 4 (emphasis added). The Court observes that deposition testimony is competent summary judgment evidence when the deponent has personal knowledge concerning the subject about which he testifies. *Compare Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330 (5th Cir. 2007) ("Given that [grocery store] employees are familiar with the appearance of meat effluence, their testimony is competent summary judgment evidence that the liquid substance was meat blood."), *with Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) ("Neither the district court nor this court may properly consider hearsay evidence in affidavits and depositions."). Plaintiff has personal knowledge of his job duties, and thus his deposition testimony regarding his job duties is competent summary judgment evidence the Court may consider.

8

with evidence that Plaintiff performed job duties arguably furthering the vessel's function of "provid[ing] operational facilities" to oil spill cleanup workers. *Hufnagel*, 182 F.3d at 347; *Pearson*, 1992 WL 300826, at *2-3. Plaintiff has the burden of drawing the Court's attention to any evidence creating a genuine issue of material fact that Plaintiff contributed to the FLOATEL ONE's purported "support" function or mission, *Celotex*, 477 U.S. at 332-33 & 333 n.3, but he has not done so. Plaintiff cannot avoid summary judgment through mere allegations in his pleadings or unsupported general denials. *Littlefield*, 268 F.3d at 282; *McCord*, 2012 WL 3613111, at *5 ("[A]lthough Plaintiff's opposition memorandum asserts that he has, in fact, performed a substantial amount of work on vessels during his employment with [defendant], an unsworn and unsubstantiated statement made in an opposition memorandum is clearly not competent summary judgment evidence."). The Court finds, given Plaintiff's assigned job duties as a land-based beach cleanup worker, Plaintiff did not contribute to the FLOATEL ONE's function or mission. *Hufnagel*, 182 F.3d at 347; *Pearson*, 1992 WL 300826, at *2-3. Because Plaintiff fails the first prong of the *Chandris* test, Plaintiff is not a seaman. *Harbor Tug*, 520 U.S. at 554; *Hufnagel*, 182 F.3d at 346. Notwithstanding this finding with respect to prong one, the Court, out of an abundance of caution, also addresses the second prong of the *Chandris* test.

> **B. Plaintiff Fails to Show Any Substantial Connection to a Vessel or Identifiable Fleet of Vessels**

Southern further argues that Plaintiff is not a Jones Act seaman because he cannot satisfy the second prong of the *Chandris* test – that is, he has failed to show he has any substantial connection to a vessel in navigation, or an identifiable fleet of such vessels, that is substantial in both duration and nature. According to the U.S. Supreme Court,

> [t]he fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

*Chandris*, 515 U.S. at 368. Indeed, Jones Act coverage "depends 'not on the place where the injury is inflicted . . . but on the nature of the seaman's service, his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters.'" *Chandris*, 515 U.S. at 368 (quoting *Swanson v. Marra Bros.*, 328 U.S. 1, 4 (1946)) (alteration in original). "Whether [a plaintiff] faces perils of the sea is not outcome determinative of seaman status." *St. Romain v. Indus. Fabrication & Repair Serv., Inc.*, 203 F.3d 376, 380 (5th Cir. 2000).

Furthermore, "a worker who is permanently assigned to a job on land or on non-navigable waters is not a seaman within the meaning of the Jones Act." *Chambers v. Wilco Industrial Services, LLC*, 2010 WL 3070392, at *7 (E.D. La. Aug. 3, 2010) (Africk, J.) (citing *Smith v. Nicklos Drilling Co.*, 841 F.2d 598, 599-600 (5th Cir. 1986); *Reeves v. Mobile Dredging & Pumping Co.*, 26 F.3d 1247, 1258 (3d Cir. 1994); *Stanfield v. Shellmaker*, 869 F.2d 521, 525 (9th Cir. 1989); *Young v. Pool Co.*, 2000 WL 122246 at *3 (E.D. La. Jan. 31, 2000); *Beard v. Mentz*, 1990 WL 43925 at *1 (E.D. La. Apr. 5, 1990)). Consequently, under the second *Chandris* prong, a court must examine the "total circumstances of an individual's employment" to determine "whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Chandris*, 515 U.S. at 369.

The Fifth Circuit has set forth "an appropriate rule of thumb" for determining

whether an employee has a substantial connection to a vessel in navigation. *Becker v. Tidewater, Inc.*, 355 F.3d 376, 377 (5th 2003). According to the Fifth Circuit, if a worker spends less than thirty percent of his time in the service of a vessel, he is not a seaman. *Becker*, 355 F.3d at 377. Time spent eating and sleeping aboard a vessel is not time spent in the service of a vessel. *Butcher v. Superior Offshore*, 357 Fed. App'x 619, 620 (5th Cir. 2009) ("[Plaintiff] worked thirty percent of his time on board the vessel but this included time spent for meals and breaks, which does not make [plaintiff] a seaman."); *Hufnagel*, 182 F.3d at 347 ("The facts that Hufnagel ate, slept, and spent time on the AMBERJACK do not make him a crew member. . . . Hufnagel did not have a substantial connection with the AMBERJACK during the course of his employment with Omega.").

A maritime worker's seaman status may change when he is assigned new job duties. *Chandris*, 515 U.S. at 368. As the U.S. Supreme Court noted in *Chandris*,

> we can imagine situations in which someone who had worked for years in an employer's shoreside headquarters is then reassigned to a ship in a classic seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of a vessel. Such a person should not be denied seaman status if injured shortly after the reassignment, just as someone actually transferred to a desk job in the company's office and injured in the hallway should not be entitled to claim seaman status on the basis of prior service at sea. If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position.

*Chandris*, 515 U.S. at 372. Concomitantly, a worker "who has been reassigned to a land-based job cannot claim seaman status based on prior service at sea." *Becker*, 335 F.3d at 389. Such a reassignment may be one involving a change in the worker's essential duties

11

or the location of where he performs his work. *New v. Associated Painting Servs., Inc.*, 863 F.2d 1025 (5th Cir. 1989) (citing *Barrett v. Chevron*, 781 F.2d 1067, 1075 (5th Cir. 1988)). For the purposes of the Jones Act, a "permanent" assignment means an assignment that is " 'for an indefinite period' – not temporary." *Smith v. Nicklos Drilling Co.*, 841 F.2d 598, 599-600 (5th Cir. 1986).

Plaintiff testified at his deposition that he was reassigned to land-based work after his first six weeks as a Southern employee. When asked whether this was a "permanent change" in his job duties, Plaintiff responded affirmatively.[19] Moreover, Plaintiff has not come forward with any evidence indicating that this reassignment was not permanent. *See Chambers*, 2010 WL 3070392, at *7 ("[D]efendant has presented evidence that he was permanently assigned to a job on non-navigable waters at the time of his injury. . . . Plaintiff has not provided any evidence that his assignment to Little Bayou Black was not permanent or indefinite."). Following his reassignment, Plaintiff cleaned oil-polluted beaches. His time aboard the FLOATEL ONE was spent attending brief safety meetings, and eating and sleeping. Eating and sleeping is not considered time spent in the service of a vessel, *Butcher*, 357 Fed. App'x at 620; *Pearson*, 1992 WL 300826 (finding that a plaintiff who slept and ate aboard a vessel but did not "perform a substantial part of his work on that vessel" was not a seaman).

To support his argument that he had a substantial connection to a vessel or fleet of vessels, Plaintiff highlights the time he spent being ferried on crewboats between the FLOATEL ONE and the beaches where he performed his cleanup work. The Court notes that, at his deposition, Plaintiff responded affirmatively when asked if he was merely a

---

[19] R. Doc. 70-3 at p. 18.

12

"passenger" while aboard such crewboats.[20] Plaintiff has not come forward with any evidence that he performed work duties when in transit between the beaches and the FLOATEL ONE. Time spent in transit as a passenger on a vessel "is insufficient in and of itself to satisfy the *Chandris* test." *McCord*, 2012 WL 3613111, at *4; *see also Barrios v. Engine & Gas Compressor Servs., Inc.*, 669 F.2d 350, 353 (5th Cir. 1982) ("[Plaintiff] further argues that . . . he was nonetheless a seaman because he regularly rode from platform to platform on crewboats and 'performed a substantial amount of work' on the crewboats that 'contributed to the function of the vessels.' However, there is no showing that [plaintiff's] work aboard them was other than transitory and incidental to his employment as a mechanic on the compressor stations."); *Stanley v. Guy Scroggins Constr. Co.*, 297 F.2d 374, 377 (5th Cir. 1961) (explaining that an individual who "merely receives transportation" on vessels is not a seaman); *Borne v. Vintage Petroleum, Inc.*, 949 F.Supp. 492, 493-94 (S.D. Tex. 1996) ("The record shows that Plaintiff often took a vessel out to wells or platforms to perform his job duties. The fact that he used a boat to get to job sites does not qualify him as being assigned to a vessel or a fleet of vessels. The boats Plaintiff used were merely a means of transportation, a 'nautical motor pool,' to the sites where he performed his true job duties.") (quoting *Munguia v. Chevron, Co., U.S.A.*, 768 F.2d 649, 653 (5th Cir. 1985)). Plaintiff's time aboard the "nautical motor pool" to and from the FLOATEL ONE does not make him a seaman. *Munguia*, 768 F.2d at 653.

Having carefully reviewed the competent summary judgment evidence Southern has presented, and the fact that Plaintiff has not come forward with any contradictory evidence, the Court finds that, given the nature of Plaintiff's job duties and where he performed them

---

[20] R. Doc. 70-3 at p. 16.

following his permanent reassignment to land-based cleanup work, the "total circumstances" of Plaintiff's employment do not establish a substantial connection in time and nature to a vessel or fleet of vessels. *Chandris*, 515 U.S. at 369. Any alleged substantial connection that Plaintiff had to a vessel during the six weeks he was assigned to the JOHN LEE is not relevant following Plaintiff's permanent reassignment of job duties. Thus, Plaintiff fails the second prong of the *Chandris* test. *See Smith*, 841 F.2d at 599-600 (holding that a plaintiff who was injured three weeks after he was permanently reassigned from a vessel to a land rig was not a seaman); *Chambers*, 2010 WL 3070392, at *7 (holding that a plaintiff who was injured nine days after he was permanently reassigned to a job on non-navigable waters was not a seaman); *Bear v. Nobel Drilling Corp.*, 1990 WL 43925, at *2-3 (E.D. La. Apr. 5, 1990) (Mentz, J.) (holding that a plaintiff, who was terminated when his vessel was taken out of service, but was later rehired, permanently assigned to a land rig, and then injured five days later, was not a seaman at the time of he was injured). Plaintiff was not a seaman when he was injured on September 17, 2010, and he may not assert a Jones Act negligence claim against Southern. Southern's motion for summary judgment with respect to Plaintiff's Jones Act negligence claim is **GRANTED.**

## II. Maintenance and Cure

Second, Southern contends that because Plaintiff is not a Jones Act seaman, he may not assert a claim for maintenance and cure. Plaintiff responds that the "Jones Act does not control actions for maintenance and cure" and, consequently, Plaintiff's Jones Act seaman status, or lack thereof, "is of no particular relevance."[21]

"Maintenance and cure is the implied contractual right of a seaman who is injured

---

[21] R. Doc. 75 at p. 4 n.6.

in the service of the ship, regardless of fault, to payments from the shipowner through the time of maximum recovery." *Durgin v. Crescent Towing & Salvage, Inc.*, 2002 WL 31365365, at *2 (E.D. La. Oct. 18, 2002) (Engelhardt, J.). As another section of this Court has observed, "[o]nly a seaman is entitled to the benefits of maintenance and cure." *McCord*, 2012 WL 3613111, at * 5 (citing *Hall v. Diamond M Co.*, 732 F.2d 1246, 1248 (5th Cir. 1984)). The Court has determined that Plaintiff is not a Jones Act seaman and recognizes that it must apply the same standard when determining whether Plaintiff is a seaman entitled to maintenance and cure. *Hall*, 732 F.2d at 1248 ("The standard for determining seaman status for purposes of maintenance and cure is the same as that established for determining status under the Jones Act."). Thus, as Plaintiff is not a seaman, he may not seek maintenance and cure. *McCord*, 2012 WL 3613111, at * 5 ("Because Plaintiff has failed to carry the burden of proving that he is a Jones Act seaman, he no longer has a legally viable claim for maintenance and cure."). Southern's motion for summary judgment with respect to Plaintiff's maintenance and cure claim is **GRANTED.**

### III.  Unseaworthiness

Finally, Southern submits that Plaintiff's unseaworthiness claim must be dismissed because Southern does not own the FLOATEL ONE. General maritime law imposes on a vessel owner an absolute, non-delegable duty to provide a seaman with a vessel reasonably fit for its intended use – that is, a seaworthy vessel. *See,* e.g., *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960); *Comeaux v. T.L. James & Co., Inc.*, 666 F.2d 294, 298-99 (5th Cir. 1982). A plaintiff cannot maintain a seaworthiness claim against a defendant who does not own, operate or control a vessel on which he is injured. *See, e.g., McCord*, 2012 WL 3613111, at *5 ("[B]ecause there are neither allegations nor facts in the record to suggest

15

that [defendant] owns, operates, or controls the vessel upon which the accident allegedly occurred, it is entitled to summary judgment on Plaintiff's unseaworthiness claim."); *Olsen v. E.H. Wachs, Inc.*, 2009 WL 152512, at *5 (E.D. La. Jan. 22, 2009) (Vance, J.) ("The appropriate defendant in an unseaworthiness claim is the person who had operational control of the ship at the time the condition was created or the accident occurred.").

Southern has produced a declaration pursuant to 28 U.S.C. § 1746 that is signed by Stacey Roque ("Roque"), Southern's Vice President. Roque declares under penalty of perjury that Southern has never owned or operated the FLOATEL ONE, or any other vessel.[22] Plaintiff has not responded to Southern's argument that he cannot maintain a claim for unseaworthiness against Southern because Southern does not own the vessel.[23] As there is no evidence before the Court that Southern owns, operates, or controls the FLOATEL ONE, Southern is entitled to summary judgment on Plaintiff's unseaworthiness claim. Southern's motion with respect to Plaintiff's unseaworthiness claim is **GRANTED**. *McCord*, 2012 WL 3613111, at *5.

## IV. Worker's Compensation

In his supplemental opposition memorandum, Plaintiff draws the Court's attention to the fact that Southern "has admitted the employer/employee relationship between itself" and Plaintiff, and submits that Southern has refused to pay Plaintiff worker's compensation

---

[22] R. Doc. 82-1.

[23] *See* R. Docs. 75 and 80. The Court also notes that the uncontested material facts statement contained in the parties' joint proposed pretrial order includes the assertion that "Southern did not own or operate the vessel on which plaintiff's alleged accident occurred." *See* R. Doc. 84 at p. 11.

benefits.[24] Plaintiff's argument regarding whether Southern owes Plaintiff any worker's compensation is not relevant to any claim he has asserted against Southern in the above-captioned matter, and the Court therefore declines to consider it.

### *Conclusion*

Accordingly, for the reasons set forth above,

**IT IS ORDERED** that Southern's motion for summary judgment be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claim asserted against Southern for Jones Act negligence is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claim asserted against Southern for maintenance and cure is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claim asserted against Southern for unseaworthiness is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this __12th__ day of March, 2013.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[24] R. Doc. 80. The Court recognizes that Southern, in its reply memorandum, "clarifies the record and confirms that it takes no position on whether [P]laintiff has a remedy under the LHWCA or the Louisiana Worker's Compensation Act." R. Doc. 82 at p. 11.